NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  CC-12-1208-DHKi |
| TINA CHI HOUNG, | Bk. No.  2:07-bk-21354-BR |
| Debtor. | Adv. No. 2:09-ap-02717-BR |
| NICK ARGAMAN ALDEN, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| EDWARD M. WOLKOWITZ, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on November 15, 2012
at Pasadena, California

Filed - December 6, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:    Appellant, Nick Argaman Alden, appeared in pro per; Irv M. Gross of Levene, Neale, Bender, Yoo & Brill, LLP, appeared and argued for Appellee, Edward M. Wolkowitz, Chapter 7 Trustee.

Before:  DUNN, HOLLOWELL, and KIRSCHER, Bankruptcy Judges.

---

[1]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

On October 24, 2011, the Panel issued a Memorandum ("Houng I") affirming the entry of default against Appellant. Alden v. Wolkowitz (In re Houng), 2011 WL 6989900 (9th Cir. BAP 2011). Although the record in Houng I suggested that the bankruptcy court had made a ruling at the hearing on the Appellee's motion for default judgment, the official transcript of the hearing ended:

"THE COURT: Yeah, I'm going to rule (portion of proceedings not available.)

(Proceedings concluded.)"

Accordingly, there were no findings available to allow the Panel to conduct a full appellate review of the bankruptcy court's default judgment ("2011 Default Judgment") entered against Appellant.[2] The Houng I Panel vacated the 2011 Default Judgment and remanded the matter to the bankruptcy court for further proceedings.[3]

On remand, the bankruptcy court conducted further proceedings on a renewed motion for default judgment, made findings of fact and

_____

[2] On remand, the Appellee advised the bankruptcy court: "However, when I ordered a transcript of the hearing in connection with the notice of appeal, I discovered that the electronic transcription of the hearing had prematurely ended ("THE COURT: Yeah, I'm going to rule (Portion of proceedings not available.) (Proceedings concluded.)"). It appears that somehow eventually the full record was recovered. A complete transcript of the February 1, 2011 hearing is now available.

[3] The Houng I Panel did determine, as a matter of law, that the claim against Appellant, which sought to avoid and recover a preferential transfer, was untimely. The bankruptcy court noted in the proceedings on remand that the preference claim was not viable.

2

conclusions of law on two claims for relief asserted against the Appellant,[4] and again entered a default judgment ("2012 Default Judgment") against the Appellant, which we now AFFIRM.

## I.  FACTS[5]

A.  <u>Scope of the Remand</u>.

The remand proceedings at issue in the current appeal were framed by the <u>Houng I</u> decision.

> Civil Rule 55(b)(1) allows for entry of a default judgment by the Clerk only when the amount demanded is for a sum certain, "or a sum that can be made certain by computation."  Otherwise, entry of a default judgment must be by the court, pursuant to Rule 55(b)(2):
>
> > **(2) By the Court**.  In all other cases, the party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate a judgment, it needs to:
> >
> > > (A) conduct an accounting;
> > > (B) determine the amount of damages;
> > > (C) establish the truth of any allegation by evidence; or
> > > (D) investigate any other matter.
>
> Courts have wide discretion in deciding whether to enter a default judgment. <u>Wells Fargo Bank v. Beltran (In re Beltran)</u>, 182 B.R. 820, 823 (9th Cir. BAP 1995). Factors a court may consider in exercising its discretion

---

[4]  The remaining claims against Appellant were (1) conspiracy to commit fraud, and (2) avoidance and recovery of fraudulent transfers.

[5]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as Civil Rules.

3

include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d [1470,] 1471-72 (9th Cir. 1986).

> Where a default has been entered, the court should accept as true all allegations in the complaint, except those relating to damages. Televideo Sys., Inc. v. Heiddenthal, 826 F.2d 915, 917 (9th Cir. 1987); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).

Houng I, 2011 WL 6989900 at *5-*6.

B.  Proceedings Following Remand

Following remand, the bankruptcy court set a status conference for December 19, 2011 at 2:00 p.m.  Just before that status hearing, the plaintiff in the adversary proceeding ("Trustee") applied to the bankruptcy court to schedule a "prove-up hearing on the issue of damages."  No record of the December 19 hearing is available for our review.

On January 17, 2012, the Trustee filed a new motion for default judgment ("Default Judgment Motion") and noticed a hearing on the Default Judgment Motion for 10:00 a.m. on February 7, 2012. On the same date, the Trustee filed his Memorandum of Points and Authorities and Evidence in Support of Trustee's Request for Entry of Default Judgment Against Defendant Nick Alden; Declaration of Irv M. Gross in Support Thereof ("Submissions").  The Submissions

4

also contained a statement that a "Prove-Up Hearing" would be held at 10:00 a.m. on February 7, 2012.

Mr. Alden filed an opposition ("Opposition") to the Default Judgment Motion, which included his memorandum of points and authorities, and his declaration. The Opposition noted the correct hearing date, but stated that the hearing time was "2:00 a.m." [sic]. On January 16, 2012, Mr. Alden issued a subpoena to City National Bank ("Bank"), commanding it to appear and testify on February 7, 2012 at 2:00 p.m, and to produce at that time "[a]ll the documents evidencing the wire transfer of the sum of $150,000 from PIA Development, Inc. account, xxxx997, to Unique Holding Corporation, dated March 5, 2007, a copy of which is attached." The subpoena was served by personal service on "Ramon Nuno" by process server Chad Van Hazelan on January 17, 2012. The certificate of service does not establish Mr. Nuno's relationship to the Bank. In addition, the subpoena had an incorrect case number in the caption, and it did not reference the adversary proceeding in which the February 7 appearance was to be made. Mr. Alden apparently provided no notice to the Trustee that the subpoena had been issued.[6]

---

[6] A discussion about whether the Trustee was served with the subpoena is in the record:

    MR. GROSS: I never even received notice of the subpoena, by the way. I don't know if you sent it to me.

    MR. ALDEN: We always send a copy of the subpoena.

Hr'g Tr. (February 7, 2012) at 5:3-5. In light of (1) Mr. Alden's (continued...)

5

On February 7, 2012, the bankruptcy court called the matter for hearing ("February 7 Hearing") at 10:00 a.m. Mr. Alden was not present. Counsel for the Trustee advised the bankruptcy court that when he reviewed the Opposition, he saw Mr. Alden's notation of the hearing time of 2:00 p.m., assumed that was the correct time, and sent a revised notice of hearing stating the February 7 Hearing would take place at 2:00 p.m. On the morning of the February 7 Hearing, however, he realized the revised notice of hearing should not have been sent, and called Mr. Alden, who advised he would be unavailable to be at the bankruptcy court at 10:00 a.m., because he was to be at state court ex parte proceedings that morning. In light of the Trustee's explanation of Mr. Alden's absence, the bankruptcy court agreed to postpone the proceedings on the Default Judgment Motion until 2:00 p.m.

However, at the end of its morning calendar at approximately 11:30 a.m., the bankruptcy court observed that Mr. Alden in fact was in the courtroom. Rather than have the parties reappear at 2:00 p.m., the bankruptcy court called the case again. The colloquy between Mr. Alden and the bankruptcy court was confusing, and concluded with the bankruptcy court agreeing to recall the case at 2:00 p.m., apparently because of Mr. Alden's subpoena of the Bank to provide documents to explain the Wire Transfer. No record of the

[6](...continued)
continuous disregard of procedures and (2) the bankruptcy court's observation that Mr. Alden did not file any statement that he had "a witness that's just going to appear," it is unlikely that the Trustee did receive a copy of the subpoena. See id. at 5:5-6.

6

2:00 p.m. portion of the February 7 Hearing is available for our review.[7]

A continued hearing on the Default Judgment Motion was held on March 12, 2012 ("March 12 Hearing"). After the case was called, the bankruptcy court recapped the reason for not conducting the February 7 Hearing: "Well, last time we were here, we continued it, because you were going to get a witness." Hr'g Tr. (March 12, 2012) at 1:10-11. At the March 12 Hearing, the bankruptcy court recounted the evidence and made preliminary findings, granting the Default Judgment Motion and stating that the 2012 Default Judgment, when entered, would be for the amount of $250,000.[8]

It appears that after the March 12 Hearing, the Trustee

---

[7] There is no record of proceeding or transcript for the 2:00 p.m. portion of the February 7 Hearing. There are only two unnumbered entries on the docket for February 7, 2012. The first reads:

> Hearing (Adv. Motion) Continued (RE: related document(s) 96 MOTION FOR DEFAULT JUDGMENT filed by Edward M. Wolkowitz) Hearing to be held on 02/07/2012 at 02:00 PM 255 E. Temple St. Courtroom 1668 Los Angeles, CA 90012 for 96, (Fortier, Stacey)(Entered: 02/07/2012)

The second reads:

> Hearing (Adv. Motion) Continued (RE: related document(s) 96 MOTION FOR DEFAULT JUDGMENT filed by Edward M. Wolkowitz) Hearing to be held on 03/12/2012 at 02:00 PM 255 E. Temple St. Courtroom 1668 Los Angeles, CA 90012 for 96, (Fortier, Stacey)(Entered: 02/07/2012)

[8] The adversary proceeding docket does not contain any record of the March 12 Hearing or any notation that the March 12 Hearing was held.

7

prepared proposed findings of fact and conclusions of law ("Proposed Findings"). On March 26, 2012, Mr. Alden filed a declaration regarding his objection to the Proposed Findings, to which the Trustee responded on April 2, 2012. The bankruptcy court entered its Findings of Fact and Conclusions of Law After Hearing on Motion for Entry of Default Judgment ("Findings and Conclusions") on April 10, 2012,[9] with respect to the conspiracy and fraudulent transfer claims for relief. The 2012 Default Judgment was entered the same date.

C. The Underlying Facts

Few facts of the actual dispute are set out in Houng I. Accordingly, we restate here the findings the bankruptcy court made on remand to the extent necessary to resolve the only issue in the pending appeal, i.e., whether the bankruptcy court abused its discretion when it entered the 2012 Default Judgment.

The debtor in this case, Tina Chi Houng, acquired title to her residence ("Residence") on October 24, 2003. In mid-2006, Ms. Houng entered into a purported agreement to sell the Residence to her friend, Conglin Shen, for a sale price of $2,150,000. At that time, liens against the Residence totaled approximately $1,100,000.

To facilitate the "sale" of the Residence, Ms. Houng borrowed

---

[9] Mr. Alden filed his Notice of Appeal on April 2, 2012, before the Findings and Conclusions and the 2012 Default Judgment were entered by the bankruptcy court.

$430,000 from Kenneth Lu ("Lu Loan").[10] The record reflects that the Lu Loan was repaid within days from the "sale" proceeds. The bankruptcy court found that the sale proceeds from which the Lu Loan was repaid included $14,773.42 from Ms. Shen and the proceeds of two loans Ms. Shen obtained, secured by the Residence, apparently to finance the purchase. The loans obtained by Ms. Shen in connection with the "sale" ultimately went into default.

On October 3, 2006, Ms. Houng executed a grant deed ("Houng Grant Deed") purporting to transfer all of her right, title, and interest in the Residence to Ms. Shen. Escrow closed on the "sale" of the Residence from Ms. Houng to Ms. Shen on October 26, 2006. The Houng Grant Deed was recorded with the Los Angeles County Recorder as Document 062376824 on October 26, 2006.

Also on October 3, 2006, Ms. Shen executed a grant deed ("Shen Grant Deed") purporting to transfer all of her right, title, and interest in the Residence to Unique Holding Corporation ("Unique"), a California corporation owned by Ms. Houng. The Shen Grant Deed was recorded with the Los Angeles County Recorder as Document 062431473 on November 1, 2006, and it reflects that it was

---

[10] Additional facts about the Lu Loan are available in the record, including the fact that Mr. Lu received more than $20,000 from this transaction. Further, the Trustee was successful in obtaining judgment against Mr. Lu to recover the $21,118.49 in interest determined to be usurious. The bankruptcy court entered summary judgment on the Trustee's motion against Mr. Lu on July 29, 2010. Mr. Lu appealed the summary judgment entered against him (BAP No. CC-10-1319), but later stipulated to the dismissal of the appeal on the basis that he no longer wished to pursue the appeal. See Docket Nos. 57 and 59 in the adversary proceeding.

9

a "[c]onveyance given for no value. Gift."

The bankruptcy court found that as a result of the "sale" from Ms. Houng to Ms. Shen, and the "almost immediate gift" of the Residence by Ms. Shen to Unique, Ms. Houng (1) effectively continued to own the Residence and (2) obtained several hundred thousand dollars out of escrow.

Ms. Houng's real estate agent in connection with the "sale" was Mr. Alden's son, Guy Alden ("Guy"). At the time of the purported "sale," Ms. Houng was a defendant in litigation filed against her by Guaranty Bank of California ("Guaranty Bank Litigation"). Guy referred Ms. Houng to Mr. Alden, who thereafter represented Ms. Houng, inter alia, in the Guaranty Bank Litigation. Mr. Alden also represented Ms. Houng in litigation filed against her and others by Tianjin New Sun Light Industry Products Co., Ltd. ("Tianjin Litigation"). Default was entered against Ms. Houng in the Tianjin Litigation on October 6, 2006, and a default judgment was entered against her in the Tianjin Litigation on October 24, 2006.[11] Finally, Export-Import Bank of the United States ("Export-Import Bank Litigation") sued Ms. Houng on November 9, 2006 to collect on a guaranty she had executed for a promissory note. The promissory note had been declared in default for nonpayment in March of 2006, and demand had been made upon Ms. Houng for payment

---

[11] Although the default judgment against Ms. Houng in the Tianjin Litigation was set aside approximately two years after it was entered, Tianjin was a creditor of Ms. Houng at the time of the "sale."

10

under the guaranty prior to the time of the "sale."[12]

Although Mr. Alden denies that he participated in the "sale," the Shen Grant Deed states on its face that after recording, it was to be mailed to Mr. Alden, as were the tax statements on the Residence. On October 30, 2006, Ms. Houng directed the escrow company to deliver a check representing $250,000 of the "sale" proceeds to Mr. Alden.

After Ms. Houng filed her bankruptcy petition, the Trustee filed an adversary proceeding against Mr. Alden, among others, seeking (1) a determination among other claims, that the "sale" was a fraudulent transfer, and (2) to recover the $250,000 in "sale" proceeds received by Mr. Alden.[13]

---

[12] In his opposition to the Default Judgment Motion, Mr. Alden admitted that he was first hired on August 23, 2006 to represent Ms. Houng in the Guaranty Bank Litigation. He also admitted that he was later hired to represent Ms. Houng in other litigation. He asserted that the $100,000 he was paid from escrow as attorneys fees was for work he performed in four lawsuits over a period of two years. Since at the time he received the $100,000 from escrow he had, by his own admission, provided legal services to Ms. Houng for no more than 68 days, he cannot also claim the $100,000 as attorneys fees earned for representing Ms. Houng in four lawsuits over two years.

[13] The other defendants in this litigation were Mr. Lu, based on the Trustee's claim to recover the usurious interest, and Mr. Alden's son, Guy. Guy filed a chapter 7 bankruptcy case, determined to be a no asset case, in which Guy received a discharge. The Trustee did not pursue a nondischargeable judgment against Guy in Guy's bankruptcy case. Therefore, he is foreclosed from pursuing the litigation against Guy in the adversary proceeding in Ms. Houng's bankruptcy case.
The Trustee filed separate fraudulent transfer litigation
(continued...)

11

Mr. Alden's position, both before the bankruptcy court and on appeal, is that $100,000 of the $250,000 was to pay legal fees Ms. Houng owed to him.[14] However, the bankruptcy court found that Mr. Alden was unable to produce "any documentation (ex: time records, billing statements) evidencing that any legal fees were owed him by [Ms.] Houng at that time, let alone in the amount of $100,000." Findings and Conclusions at 5:8-10.

With respect to the remaining $150,000, Mr. Alden asserted that pursuant to a written agreement between Ms. Houng and Ms. Shen, Mr. Alden was to hold the $150,000 as a reserve, for the benefit of Ms. Shen, to make mortgage payments, presumably on the loans she obtained on the property, for a one-year period. Mr. Alden allegedly drafted the agreement, but could not produce either a copy of it or any evidence of its existence at the time of the March 12 Hearing. Notwithstanding his purported understanding that he was to hold the $150,000 for the period of one year in order to ensure Ms. Shen's loans on the Property were paid, Mr. Alden paid the $150,000 to Unique on Ms. Houng's sole instructions on March 5, 2007, less than five months after Mr. Alden received the funds. At

[13](...continued) against Ms. Shen and Unique (Adv. Proc. 08-01481). The Trustee obtained default judgments ("Shen Default Judgment") against these defendants on July 27, 2009, after they failed to comply with discovery and failed to defend or appear. The Shen Default Judgment avoided the Houng Grant Deed which effectuated the transfer of the Residence from Ms. Houng to Ms. Shen. No appeal was taken from the Shen Default Judgment.

[14]    See n.12 above.

12

Mr. Alden's direction, City National Bank wired $150,000 from the account of "Pia Development, Inc." to East-West Bank for the benefit of Unique. Mr. Alden asserts that, having made this transfer, he should be insulated from any fraudulent transfer claim brought by the Trustee, because he effectively "gave back the money" to Ms. Houng.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Mr. Alden asserts numerous issues on appeal. To the extent they assert error on the part of the bankruptcy court in entering default, as opposed to entering the 2012 Default Judgment, they are not properly before us, having previously been the subject of the Panel's decision in Houng I. Specifically, we do not address Mr. Alden's issues (1) that the bankruptcy court erred when it entered a default after he had made a general appearance, and (2) that the bankruptcy court erred as a matter of law when it failed to consider his motion to dismiss at trial.[15]

---

[15] Mr. Alden asserts that the bankruptcy court erred when it failed to consider his "Anti-SLAPP" motion at the trial on the merits, as the bankruptcy court promised to do when it denied the motion prior to the entry of default and the 2011 Default Judgment against Mr. Alden. As the Panel stated in Houng I, "[g]iven that the judgment entered by the bankruptcy court and appealed by [Mr. Alden] is based on a claim under federal bankruptcy law, none of the state law [Anti-SLAPP] provisions cited [by Mr. Alden] are applicable. We therefore decline to delve any further into the court's failure to consider those provisions."

13

Neither do we address Mr. Alden's issue argued before us that the bankruptcy court erred in entering the 2012 Default Judgment because the claim against him for preferential transfer was untimely. That issue was raised and affirmatively disposed of, in Mr. Alden's favor, in Houng I in connection with the 2011 Default Judgment. The 2012 Default Judgment was not based on a preference claim.

To the extent Mr. Alden's issues raise defenses, affirmative or otherwise, to the complaint, they were foreclosed by the entry of default, and we need not consider them here. Those issues include Mr. Alden's assertions that the Trustee acted with "unclean hands," that the alleged refinance of the Residence did not render Ms. Houng insolvent, and whether Mr. Alden's legal advice to Ms. Houng is privileged.

The only issue with which we are concerned in this appeal is whether the bankruptcy court abused its discretion when it entered the 2012 Default Judgment.

IV. STANDARDS OF REVIEW

As the Panel stated in Houng I, the bankruptcy court's decision to enter a default judgment is reviewed for abuse of discretion. Speiser, Krause & Madole P.C. v. Ortiz, 271 F.3d 884, 886 (9th Cir. 2001).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to

14

the relief requested.  Id.  Then, we review the bankruptcy court's fact findings for clear error.  Id. at 1262 & n.20.  We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  Id.

We may affirm the bankruptcy court's ruling on any basis supported by the record.  See, e.g., Heilman v. Heilman (In re Heilman), 430 B.R. 213, 216 (9th Cir. BAP 2010); FDIC v. Kipperman (In re Commercial Money Ctr., Inc.), 392 B.R. 814, 826-27 (9th Cir. BAP 2008); see also McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

## V.  DISCUSSION

A.  The Bankruptcy Court Applied the Correct Legal Standard in Determining Whether to Enter the 2012 Default Judgment

In the Ninth Circuit, the law is clear regarding the factors a trial court may consider in exercising its discretion in deciding whether to enter a default judgment.  Those factors ("Eitel factors") include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

1.  The possibility of prejudice to the Trustee

In Houng I, the Panel cautioned that the standard to apply in

15

determining whether setting aside a judgment is prejudicial is "whether [plaintiff's] ability to pursue his claim will be hindered." Houng I, 2011 WL 6989900 at *8 (quoting TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001)). The bankruptcy court's determination concerning this factor is explicit:

> Without a default judgment, the estate will be prejudiced because it will have been deprived of the significant equity in the [Residence] which was stolen by [Ms.] Houng, a substantial portion of which, $250,000, was fraudulently transferred by [Ms.] Houng to [Mr.] Alden. The [Residence] has been lost in foreclosure and the estate has no other recourse or remedy for recovering the fraudulently transferred funds.

Findings and Conclusions at 7:11-15.

The Trustee is a fiduciary for Ms. Houng's bankruptcy estate, charged with liquidating nonexempt assets for distribution to Ms. Houng's creditors in conformance with statutory priorities established in the Bankruptcy Code. See §§ 323(a) and 704(a). The Trustee was hampered in his role to liquidate his claim against Mr. Alden, for the benefit of Ms. Houng's creditors, by Mr. Alden's recurring failures to meet the obligations of a litigant vis-a-vis the Rules regarding pleadings, appearances and other formalities. It is clear on this record that giving Mr. Alden more time would not lead to a different result. Mr. Alden was not able to provide the bankruptcy court with any of the documents upon which his defenses were based, despite being given numerous opportunities over time to do so.

//

//

16

**2.** <u>The sufficiency of the complaint, the merits of Trustee's substantive claims, and the possibility of a dispute concerning material facts</u>

Because they are interwoven, we consider together three of the Eitel factors: whether the complaint was sufficient, whether the Trustee's claim against Mr. Alden has merit, and whether there is a dispute regarding material facts.

The third claim for relief in the Trustee's complaint against Mr. Alden alleges, inter alia, that [Ms.] Houng (1) made the transfer of $250,000 to Mr. Alden from the escrow of the "sale" of the Residence "with the actual intent to hinder, delay or defraud" an entity to which [Ms.] Houng was, or became, on or after the date that the escrow transfer was made indebted. The bankruptcy court determined that the complaint sufficiently alleged all of the necessary elements of a fraudulent transfer pursuant to § 548(a)(1)(A). We agree, and therefore reject Mr. Alden's assertion on appeal that the complaint failed to state a claim for relief.

Mr. Alden challenged the allegations on several grounds. First, Mr. Alden asserts that the bankruptcy court's prior determinations (1) that the Shen Grant Deed was a fraudulent transfer, and (2) that Ms. Houng acted with the requisite "intent to hinder, delay, or defraud a creditor," in making the escrow transfer to him (and others) cannot be used against him because those determinations were made by default in litigation to which he was not a party.

We need not reach these issues, because in light of

17

Mr. Alden's default, the allegations identified above are deemed to be true. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Second, Mr. Alden asserts that because the claim for relief was made on the Trustee's "information and belief," it must fail because the Trustee provided no evidence of facts to support the information and belief. Mr. Alden disregards the evidence presented by the Trustee in support of the Default Judgment Motion, which was appropriately considered by the bankruptcy court, and which Mr. Alden did not counter with evidence of his own.

Third, Mr. Alden asserts that there could be no fraudulent transfer because Ms. Houng had no creditors at the time the transfer was made. We consider this assertion specious, all the more so because Mr. Alden was representing Ms. Houng in litigation in which she was a defendant both at the time the "sale" of the Residence occurred and at the time he received the $250,000 from the escrow proceeds of the "sale."

Despite the fact that the Trustee made sufficient allegations to establish that the transfer of $250,000 to Mr. Alden constituted a fraudulent transfer and that the bankruptcy court was entitled to deem the allegations true, the bankruptcy court nevertheless provided Mr. Alden with an opportunity in responding to the Default Judgment Motion to present evidence to establish that the allegations were not true. Thereafter, the bankruptcy court made the following analysis with respect to the Eitel factor requiring an evaluation of the Trustee's substantive claims:

18

> The Trustee's claims are meritorious. The Trustee and [Mr.] Alden had every opportunity to present evidence and argue in support of their respective positions. The evidence and argument of the Trustee was persuasive in demonstrating (I) [Ms.] Houng's fraudulent scheme and intent to strip the [Residence] of its equity and place such equity out of the reach of her creditors by, among other things, causing $250,000 of the escrow proceeds to be transferred to [Mr.] Alden (ii) [Mr.] Alden's receipt of $250,000 in fraudulently obtained funds (iii) [Mr.] Alden's participation in assisting [Ms.] Houng to divert the fraudulently obtained and transferred funds. [Mr.] Alden, on the other hand, was unable to offer any probative competent evidence that he was owed $100,000 in attorneys fees by [Ms.] Houng at the time of the transfer, or that he held $150,000 (out of the $250,000) in good faith pursuant to a written agreement between [Ms.] Houng and [Ms.] Shen (who also participated in the fraud) that [Mr.] Alden would hold the money as a reserve to cover unpaid mortgage payments, a written agreement [Mr.] Alden claims he prepared but could not produce.

Findings and Conclusions at 7:16-27. There is adequate evidence in the record before us to support the bankruptcy court's analysis that the Trustee's claim for recovery of the $250,000 as a fraudulent transfer was both sufficiently stated in the complaint and meritorious. More important, although given the opportunity to present evidence to establish a dispute as to material facts, Mr. Alden did not do so.

### 3. The sum of money at stake

The bankruptcy court implicitly suggested that this factor likely was at issue in Eitel itself, where the default judgment there was in the amount of $3 million. The bankruptcy court determined that a judgment in the amount of $250,000 was "not so large as to weigh against entry of a default judgment," especially where Mr. Alden admitted that he retained $100,000 of the amount that Ms. Houng transferred to him. The bankruptcy court pointed to

19

an unpublished decision holding that a $250,000 default judgment was not excessive.  See Vallavista Corp. v. Vera Bradley Designs, 2011 WL 7462065 *3 (N.D. Cal. 2011).

Mr. Alden appears to assert that the judgment is too large, because he "returned" $150,000 to Ms. Houng.  The record reflects otherwise.  Mr. Alden, at Ms. Houng's request, transferred $150,000 to Unique, a separate legal entity from Ms. Houng.  This transfer assisted Ms. Houng in placing the $150,000 beyond the reach of her personal creditors.  As to the $100,000 Mr. Alden asserted he retained for payment of his attorney's fees, we agree with the bankruptcy court that there is insufficient evidence in the record to support Mr. Alden's claim that Ms. Houng owed him anything, let alone $100,000, for services Mr. Alden provided to Ms. Houng between the date he was retained, August 23, 2006, and the date he received the escrow proceeds, October 26, 2006.

In light of the foregoing, judgment in the amount of $250,000 is supported by the record, and is not excessive.

4.  The strong policy favoring decisions on the merits

We turn finally to the Eitel factor that emphasizes the strong policy favoring decisions on the merits.[16]  "Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d

---

[16]  We agree with the bankruptcy court that the Eitel factor which requires consideration of whether the default was the result of excusable neglect was addressed in Houng I.

1085, 1091 (9th Cir. 2010), quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984).  Aware of this admonition, the bankruptcy court asserted that the policy is strong, but not dispositive, in light of the existence of Civil Rule 55(b) which authorizes the entry of a judgment by default in appropriate contexts.  The record establishes that the bankruptcy court accorded Mr. Alden every opportunity to challenge entry of the default judgment by providing evidence to support both his claims and his defenses.  The record establishes Mr. Alden had no evidence to present beyond his own testimony.  Requiring the bankruptcy court to conduct a trial on the merits would be a pointless exercise under these facts.

## VI.   CONCLUSION

The bankruptcy court's findings in support of the 2012 Default Judgment satisfy the Eitel factors and are not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  The 2012 Default Judgment was based only on the conspiracy and fraudulent transfer claims asserted against Mr. Alden, not on the preference claim that the Houng I Panel determined was untimely.  Accordingly, the bankruptcy court did not abuse its discretion when it entered the 2012 Default Judgment.  We AFFIRM.

21